**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

ELAINE WANG,

              Plaintiff,

v.

PROGENICS PHARMACEUTICALS, INC.
ERIC J. ENDE, BRADLEY L. CAMPBELL,
DAVID W. MIMS, KAREN JEAN
FERRANTE, ANN L. MACDOUGALL,
GÉRARD BER and HEINZ MÄUSLI,

              Defendants.

---------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. _____

**COMPLAINT FOR VIOLATIONS OF
SECTIONS 14(a) AND 20(a) OF THE
SECURITIES EXCHANGE ACT OF
1934**

**JURY TRIAL DEMANDED**

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Progenics Pharmaceuticals, Inc. ("Progenics or the "Company"), and the members Progenics's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Progenics and affiliates of Lantheus Holdings, Inc. ("Lantheus").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on November 12, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Plato Merger Corp. ("Merger Sub"), a wholly owned subsidiary of Lantheus, with Merger Sub merging with and into Progenics, with Progenics continuing as the surviving corporation and an indirect wholly owned subsidiary of Lantheus (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Progenics common share issued and outstanding will be converted into (1) 0.2502 of a fully paid and nonassessable share of common stock, par value $0.01 per share, of Lantheus (the "Merger Consideration"). After the closing of the Proposed Transaction, Progenics shareholders will own approximately 35% and Lantheus shareholders will own approximately 65% of the post-close company's shares.

3.      As discussed below, Defendants have asked Progenics's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.  The financial projections were also utilized by the financial advisor of the Company, Jefferies LLC ("Jefferies") in conducting the valuation analyses in support of the fairness opinion. The Registration Statement also omitted material information with respect with its analyses performed to reach the fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Progenics's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Progenics is headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Progenics common stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Eric J. Ende has served as a member of the Board since November 2019.

11.     Individual Defendant Bradley L. Campbell has served as a member of the Board since June 2016.

12.     Individual Defendant David W. Mims has served as a member of the Board since November 2019.

13.     Individual Defendant Karen Jean Ferrante has served as a member of the Board since January 2014.

14.     Individual Defendant Ann L. MacDougall has served as a member of the Board since November 2019 and is the Interim Chair of the Board.

15.     Individual Defendant Gérard Ber has served as a member of the Board since November 2019.

16.     Individual Defendant Heinz Mäusli has served as a member of the Board since November 2019.

17.     Defendant Progenics is incorporated in Delaware and maintains its principal offices at One World Trade Center, 47th Floor, Suite J, New York, New York 10007.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "PGNX."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

20.     Progenics, an oncology company, develops, manufactures, and commercializes pharmaceutical products and other technologies to target, diagnose, and treat cancer cancer in the United States and internationally. The company's product candidates include Azedra, a

4

radiotherapeutic product candidate for the treatment of iobenguane scan positive, unresectable, and locally advanced or metastatic pheochromocytoma or paraganglioma for adult and pediatric patients; PyL, a clinical-stage fluorinated prostate specific membrane antigen (PSMA)-targeted PET/CT imaging agent for prostate cancer; and 1095, a PSMA-targeted Iodine-131 labeled small molecule, which is in Phase II clinical trial for the treatment of metastatic castration-resistant prostate cancer. Its product candidates also comprise PSMA TTC, a thorium-227 labeled PSMA-targeted antibody therapeutic that is in Phase I clinical trial for treatment of metastatic prostate cancer; and Leronlimab, a humanized monoclonal antibody, which is in Phase III development for the treatment of HIV infection. The company also offers Relistor-subcutaneous injection for the treatment of opioid-induced constipation (OIC) in adults with chronic non-cancer pain or advanced-illness adult patients; Relistor tablets for the treatment of OIC in adults with chronic non-cancer pain; PSMA AI, an imaging analysis technology that uses artificial intelligence and machine learning to quantify and automate the reading of PSMA targeted imaging; and automated bone scan index, a software that quantifies the hotspots on bone scans and calculates the bone scan index value. It has license agreement with Salix Pharmaceuticals, Inc. for the development and commercialization of Relistor worldwide; and Amgen Fremont, Inc. to use its XenoMouse technology for generating human antibodies to PSMA. The Company was founded in 1986 and is based in New York City, New York.

21.     On October 2, 2019, the Company and Lantheus jointly announced the Proposed Transaction:

> NORTH BILLERICA, Mass. & NEW YORK--(BUSINESS
> WIRE)--Lantheus     Holdings,     Inc.     (NASDAQ:     LNTH)
> ("Lantheus"), parent company of Lantheus Medical Imaging, Inc.
> ("LMI"), a leader in the development, manufacture and
> commercialization of innovative diagnostic imaging agents and
> products, and Progenics Pharmaceuticals, Inc. (NASDAQ: PGNX)

("Progenics"), an oncology company developing innovative medicines and artificial intelligence to find, fight and follow cancer, today announced a definitive agreement for Lantheus to acquire Progenics in an all-stock transaction. The transaction has been unanimously approved by the Boards of Directors of both companies.

Under the terms of the agreement, Lantheus Holdings will acquire all of the issued and outstanding common shares of Progenics stock at a fixed exchange ratio. Progenics shareholders will receive 0.2502 shares of Lantheus Holdings stock for each share of Progenics stock, representing approximately a 35% aggregate ownership stake in the combined company. The exchange ratio implies a 21.5% premium to Progenics' 30-day volume weighted average closing stock price ("VWAP").1

Progenics is an oncology company focused on the development and commercialization of innovative targeted medicines and artificial intelligence to find, fight and follow cancer. Progenics takes a leading role in developing diagnostics that help guide physicians and therapeutics that treat patients. The company's oncology-focused portfolio currently includes three FDA approved products as well as a rich product pipeline. AZEDRA®, approved in July 2018, is the first and only FDA approved product used to treat adult and pediatric patients 12 years and older for the ultra-orphan indications of pheochromocytoma and paraganglioma. Progenics' other approved products are oral and subcutaneous formulations of RELISTOR®, which are licensed to Bausch Health Companies Inc.

The combination of Lantheus and Progenics forms an innovative company with a diversified diagnostic and therapeutics portfolio. The transaction leverages Lantheus' long-standing expertise in complex manufacturing, supply chain and commercial excellence, with Progenics' three leading FDA approved products, clinical pipeline and development capabilities. Anchored by Lantheus' leading microbubble franchise, the resulting company's robust portfolio includes additional radiopharmaceutical products for precision diagnostics and therapeutics in the field of oncology as well as a related artificial intelligence platform with a 510(k) approved application in oncology. The two companies had pro forma combined revenue of $370.1 million for the 12 months ended June 30, 2019.

\* \* \*

Upon completion of the acquisition, which is intended to be tax-free to Progenics' stockholders for U.S. federal income tax purposes, the combined company will continue to be headquartered in North Billerica, Massachusetts and will trade on the NASDAQ under the ticker symbol: LNTH.

The combined company will be led by Lantheus Chief Executive Officer Mary Anne Heino, who brings 30 years of diverse life sciences industry experience with deep pharmaceutical and operational expertise, including commercializations across complex market channels that will help maximize the success of Progenics' development pipeline and commercial assets. Ms. Heino will be supported by Chief Financial Officer Robert J. Marshall Jr., CFA, who brings over three decades of finance experience, including in healthcare M&A, capital markets, investor relations and corporate financial planning and analysis, and Chief Operations Officer John Bolla, who has over 22 years of diverse supply chain, global operations and manufacturing experience from pilot to full-scale manufacturing of complex pharmaceutical products. Following the closing, Bradley Campbell, currently a member of Progenics' Board of Directors, will be added as a member of the Board of Directors of Lantheus Holdings.

**Compelling Strategic and Financial Rationale**

- **Robust portfolio of precision diagnostic and therapeutic products**: With complementary strengths and products, the resulting company will serve patients and healthcare professionals across the continuum of critical diagnosis and care. Progenics enhances Lantheus' R&D platform, combining to form an innovative development portfolio of precision diagnostics and oncology therapeutics.
- **Sustainable and diversified revenue growth**: This transaction bolsters and diversifies Lantheus' revenue growth, which is anchored by DEFINITY's® continued strong performance and the expansion of its microbubble franchise. The combined company will focus on advancing the successful commercialization of AZEDRA® to drive revenue growth and on maximizing the value of its development pipeline, which we believe has significant market potential. Supported by Lantheus' proven manufacturing, supply chain and clinical development expertise in the field of radiopharmaceuticals, the combination is expected to drive enhanced revenue growth over the long term.

- **Attractive returns and enhanced cash flow generation potential**: Through enhanced revenue growth and significant realizable cost savings opportunities through the elimination of redundant costs and process and scale efficiencies, Lantheus is expected to improve its gross margin profile into the future. The company expects to generate approximately $15 to $20 million in run-rate cost savings by 2022. These savings are related primarily to public company costs and G&A expenses. With improved top line growth, operational execution and synergy opportunities, the transaction is expected to enhance the company's cash flow generation and be accretive to adjusted and reported EPS by 2022 and 2023, respectively.

- **Experienced executive management team**: The combined company will be led by a management team with deep experience in the development, manufacturing and commercialization of precision diagnostics and radiopharmaceuticals, and will continue to deploy a team of highly specialized field personnel. The Lantheus Board of Directors is committed to overseeing and incentivizing management to ensure alignment with stockholders' interests.

### Additional Transaction Details

The transaction is expected to close in the first quarter of 2020, subject to approval by Lantheus and Progenics stockholders, regulatory approvals, and customary closing conditions.

### Advisors

SVB Leerink LLC is acting as financial advisor and White & Case LLP is acting as legal counsel to Lantheus. Jefferies LLC is acting as financial advisor to Progenics and O'Melveny & Myers LLP is acting as its legal counsel.

* * *

22.     The Board has unanimously agreed to Proposed Transaction.   It is therefore imperative that Progenics's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**    <u>**The Materially Incomplete and Misleading Registration Statement**</u>

23.    On November 12, 2019, Progenics and Lantheus jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

24.    With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

25.    For the *Progenics Financial Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Gross Profit, (2) EBIT, and (3) Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 138-39. Information about Lantheus's prospective financial information is material since Progenics stockholders will own 35% of the combined company.

26.    For *Lantheus Financial Projections Prepared by Progenics Management*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Gross Profit, (2) EBIT, and (3) Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of

these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 139-140.

27.     For *Lantheus Financial Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Lantheus Holdings adjusted EBITDA, and (e) Lantheus Holdings unlevered free cash flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 140-41.

28.     For *Progenics Stand-Alone Financial Projections Developed by Lantheus Holdings Management*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as Progenics unlevered free cash flow, but fails to provide: (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of these non-GAAP metric to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 141-42.

29.     For *Lantheus Holdings Combined Company Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as Combined company pro forma adjusted EBITDA, but fails to provide: (i) the line items used to calculate the non-GAAP measure, or (ii) a reconciliation of these non-GAAP metric to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a). Registration Statement at 142-43.

30.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC

regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32.    Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

33.    With respect to the Jefferies' *Discounted Cash Flow Analysis* for Progenics, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

that Progenics was forecasted to generate during the calendar years ending December 31, 2020 through December 31, 2033 and all underlying line items; (ii) the terminal values of the Company; (iii) the individual inputs and assumptions underlying the discount rate range of 11.5% to 12.5%, (iv) the individual inputs and assumptions underlying the range of perpetuity growth rates of (10.0%) to 0.0%; (v) Progenics' net cash as of September 30, 2019; and (vi) the number of fully diluted shares of Progenics common stock as of October 1, 2019. Registration Statement at 132.

34.     With respect to the Jefferies' *Discounted Cash Flow Analysis* for Lantheus, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows that Lantheus was forecasted to generate during the calendar years ending December 31, 2020 through December 31, 2024 and all underlying line items; (ii) the terminal values of Lantheus; (iii) the individual inputs and assumptions underlying the discount rate range of 7.8% to 8.8%, (iv) the individual inputs and assumptions underlying the range of perpetuity growth rates of 3.5% to 4.5%; (v) Lantheus' net debt as of September 30, 2019; and (vi) the number of fully diluted shares of Lantheus common stock as of October 1, 2019. Registration Statement at 132.

35.     With respect to the Jefferies' *Selected Companies Analysis* for Progenics, the Registration Statement fails to disclose: (i) Jefferies' objective selection criteria in choosing the selected companies to analyze; and (ii) the observed multiples, and financial metrics for each selected company. Registration Statement at 133-34.

36.     With respect to the Jefferies' *Selected Companies Analysis* for Lantheus, the Registration Statement fails to disclose: (i) Jefferies' objective selection criteria in choosing the selected companies to analyze; and (ii) the observed multiples, and financial metrics for each selected company. Registration Statement at 134.

37.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.   Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.    The Individual Defendants acted as controlling persons of Progenics within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Progenics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Progenics, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Progenics, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

48.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 26, 2019                    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:   */s/ Gloria Kui Melwani*
            Gloria Kui Melwani (GM5661)
            270 Madison Avenue
            New York, NY 10016
            Telephone: (212) 545-4600
            Facsimile: (212) 686-0114
            Email: melwani@whafh.com

*Attorneys for Plaintiff*